UNITED STATES DISTRICT
COURT DISTRICT OF MINNESOTA
Criminal No. 15-CR-11 (PJS/SER)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S RESPONSE** |
| | ) | **TO DEFENDANT'S SENTENCING** |
| v. | ) | **POSITION** |
| | ) | |
| MAXIM SENAKH, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys Gregory G. Brooker, Acting United States Attorney for the District of Minnesota, Timothy Rank, Assistant United States Attorney, Benjamin Fitzpatrick, Senior Counsel, Criminal Division, and Aaron Cooper, Senior Counsel, Criminal Division, hereby submits its Response to Defendant Maxim Senakh's Sentencing Position. As discussed further below, the Government submits that: (1) the sentence imposed by this Court should not be offset by the time Senakh served in Finnish custody; (2) a significant fine should be imposed on the defendant to disgorge his ill-gotten gains; and (3) the appropriate term of imprisonment in this case should reflect the significant harm Senakh and his co-conspirators inflicted on innocent users of the Internet.

**I.     Credit for Time Served in Finnish Custody**

In his Sentencing Position ("Position"), Senakh has requested that the time he spent in Finnish custody while contesting extradition to the United States to face prosecution in this case "be taken into account as he is sentenced." Position at 17 (Docket #47). Senakh

1

asserts that the Bureau of Prisons ("BOP") is provided no guidance by 18 U.S.C. § 4100 *et seq*. to determine whether he should receive credit for the time he spent in foreign custody. *Id*. at 14. The BOP, however, is provided with the relevant direction at 18 U.S.C. § 3585(b), titled "Credit for prior custody," which states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> > (1) as a result of the offense for which the sentence was imposed; or
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Accordingly, defendants serving a sentence in federal prisons are entitled to receive credit for time served in prior state, federal or foreign custody, including detention in foreign facilities pending extradition to the United States, that meet the criteria in Section 3585(b).

However, the Bureau of Prisons — not the sentencing court — is charged with making this determination. The Supreme Court held in *United States v. Wilson*, 503 U.S. 329, 334-335 (1992) that the authority to compute the credit pursuant to § 3585(b) lies with the BOP, as delegated by the Attorney General. *See also* 28 C.F.R. § 0.96 (delegating to the BOP all responsibilities imposed by law on the Attorney General "relating to the commitment, control, or treatment of" prisoners). The Court in *Wilson* explicitly rejected the defendant's argument that Section 3585(b) authorized a district court to credit the defendant for this time in deciding his sentence. 503 U.S. at 333. Because "computation of the credit must occur after the defendant begins his sentence[, a] district court, therefore, cannot apply § 3585(b) at sentencing." *Id*. The Court reiterated this in concluding that

2

Section 3585(b) "does not authorize a district court to compute the credit at sentencing." *Id.* at 334; *see also United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) ("The Bureau of Prisons is responsible for computing the sentencing credit after the defendant has begun serving his sentence."); *United States v. Pardue*, 363 F.3d 695, 699 (8th Cir. 2004) (applying *Wilson* to reject defendant's argument that the district court erred in failing to credit him under Section 3585(b) for time served); *United States v. Payseno*, 277 Fed. Appx. 644, 645-45 (8th Cir. 2008) (per curiam) ("the court properly declined to give Payseno credit for time served in federal custody, because authority to give such credit is left to the Attorney General").

This is equally true with respect to defendants who were held in the custody of foreign nations. *See Stojkowski v. Fisher*, Civ. No. 10-2390, 2011 U.S. Dist. LEXIS 51228, at *12-*20 (D. Minn. April 18, 2011) (rejecting prisoner's claim that BOP should have credited him for the time he spent in civil custody on immigration charges in Canada, and not just the time he spent in Canadian custody on criminal charges); *United States v. Cummings*, No. 93-1960, 1994 U.S. App. LEXIS 20728, at *5-*6 (1st Cir. 1994) (per curiam) (concluding that a request for credit under Section 3585(b) for time spent in foreign custody must first be made to BOP upon imprisonment). This court therefore cannot provide any credit for the time Senakh spent in Finnish custody in determining the appropriate sentence. Indeed, any action to diminish Senakh's sentence in light of the time he served in Finnish custody risks providing him with an improper double credit when BOP calculates the total time he will spend incarcerated in its custody.

To the extent Senakh's argument is motivated by a concern that BOP may not properly credit him for his time in Finnish custody, Senakh will have the opportunity for an administrative review of the computation of the credits provided to him. *Wilson*, 503 U.S. at 335 (*citing* 28 CFR §§ 542.10-542.16 (1990)); *Tindall*, 455 F.3d at 888. In addition, "after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. § 2241." *Id.* (citing *Wilson*, 503 U.S. at 335, and *Pardue*, 363 F.3d at 699). This ensures that Senakh receives an appropriate opportunity to contest the BOP's calculation of credit, should he have a dispute with how it is calculated.

Senakh's reliance on *United States v. Simeu*, an unpublished district court opinion from outside of the Eighth Circuit, and the United States Sentencing Guidelines, changes nothing. *See* Position at 15-16. With respect to *Simeu*, the district court's brief statement in that opinion about when Defendant's custodial sentence should begin – upon the date of his arrest by French authorities pursuant to an arrest warrant issued in that case – did not address the clear and contrary pronouncements in the controlling decisions cited above, most notably in *Wilson*, that BOP and not the court shall first decide how to credit time served in foreign custody. See *United States v. Simeu*, No. 1:14-CR-00357-WSD, 2017 WL 2664722, at *1 (N.D. Ga. June 21, 2017). Further, the sentencing guideline Senakh cites are inapposite to the issue at hand. That guideline – U.S.S.G. § 5G1.3 – applies to defendants with "an undischarged term of imprisonment," that is, individuals who have been sentenced to an incomplete term of imprisonment resulting from *another* criminal

4

charge. See U.S.S.G. § 5G1.3 app. n. 2(A) (stating that subsection (b), which Senakh cites for support, only "applies in cases in which all of the *prior offense* is relevant conduct to the *instant offense*") (emphasis added). It does not apply to individuals like Senakh who were detained pending extradition to the United States on an arrest warrant issued in the instant case. In other words, because he was not serving a sentence for another crime, the time Senakh spent in Finnish custody does not represent an undischarged term of imprisonment, and Section 5G1.3 does not apply.

The sentencing factors articulated in 18 U.S.C. § 3553 do not apply to the question of credit for time served, notwithstanding Senakh's reference to them. Section 3553(a) does not reference credit for time served; rather, Section 3585 does. Not surprisingly, the Eighth Circuit cases cited above all address the question of credit for time served in the context of Section 3585(b). See *Payseno*, 277 Fed. Appx. at 644-45; *Pardue*, 363 F3d. at 699; *Tindall*, 455 F.3d at 888. This accords with how Congress drafted Subchapter D (Imprisonment) of Chapter 227 (Sentences) – 18 U.S.C. § 3582 directs the sentencing court to consider the factors at Section 3553(a) in determining "the length of the term" of imprisonment, while Section 3585 specifically addresses how much "credit for prior custody" will be applied once that sentence is imposed. In summary, once the Court has determined the appropriate length of imprisonment, Section 3585(b) controls the question of what credit will then be provided to Senakh, and that determination will be made by BOP.

For the same reasons, the Bureau of Prisons will calculate the appropriate credit for the time Senakh spent at Sherburne County Jail when Senakh is transferred into its custody.

## II.     With Restitution Unavailable, A Significant Fine Should be Imposed

In signing the Plea Agreement, Senakh agreed that the Mandatory Victim Restriction Act ("MVRA"), 18 U.S.C. § 3663A, applies and that this Court is required to order him to pay restitution to the victim(s) in this case. Plea Agreement at ¶ 9 (Docket #42). In drafting the MVRA, "Congress intended that restitution be a compensatory remedy from the victim's perspective." *United States v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010) (quotation marks and citation omitted). "Therefore, restitution is limited to 'the victim's provable actual loss.'" *Id*. (quoting *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008)). The Eighth Circuit has indicated that restitution is not a proper means to disgorge defendants of ill-gotten gains. *See Chalupnik*, 514 F.3d at 754; *United States v. Petruk*, 484 F.3d 1035, 1038 (8th Cir. 2006). Other courts of appeal have held that "a sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss." *United States v. Zangari*, 677 F.3d 86, 92-93 (2d Cir. 2012).

Senakh argues that Adult Friend Finder ("AFF"), a victim, never suffered a cognizable loss because the only payments he received from AFF represented a commission for purchases voluntarily made by visitors he redirected to AFF's website. *See* Position at 20. The government agrees that, based on the facts and controlling Eighth Circuit caselaw, payments AFF made to Senakh for visitors he illicitly redirected to AFF's website and who purchased services on that website do not qualify as actual provable losses to AFF for purposes of calculating the appropriate restitution. Because it is our

6

understanding that all of the money AFF paid Senakh was pursuant to this model, there was no actual provable loss to AFF, and thus no restitution is owed to AFF.

To be clear, the punishment imposed on Senakh should not permit him to retain his ill-gotten gains, at least as much as is possible under the law. As the Eighth Circuit has made clear, "the fact that a defendant profited from the crime without causing actual loss to an identifiable victim may be an appropriate reason to increase his punishment." *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008). The Court in *Chalupnik* specifically identified three relevant forms of criminal penalties, including the fine imposed by the court. *Id*. Accordingly, this court may ensure that Senakh does not improperly benefit from his criminal activity by imposing an appropriately significant fine.

### III.   Term of Imprisonment

This case is not simply about the harm inflicted on Adult Friend Finder. Rather, it is about the harm caused by the Ebury botnet to tens of thousands of computer owners, internet users, website owners, and companies conducting legitimate business on the internet, harm that the defendant facilitated by helping build the botnet's infrastructure and by exploiting the traffic created by the botnet. According to an investigation by a cybersecurity firm, the Ebury botnet infected over 25,000 servers, sent an average of more than 35 million spam email messages a day, illicitly took control over 700 web servers to redirect visitors, and each day redirected over 500,000 visitors from legitimate websites to sites hosting malware. *See* Operation Windigo, available at https://www.welivesecurity.com/wp-content/uploads/2014/03/operation_windigo.pdf.

Senakh directly participated in this criminal enterprise by helping to acquire domains needed to redirect traffic generated by the botnet and by his own actions to exploit the botnet for his financial gain. Further, he knew that his co-conspirators were exploiting the botnet to send tens of millions – if not more – spam email messages.

Defendant's recommendation of a below guidelines term of imprisonment of 36 months is unwarranted given the scope and impact of the Ebury botnet, the level of Senakh's involvement in supporting and exploiting the botnet, the need for the sentence to reflect the seriousness of the offense, and the need to send a strong message of deterrence. *See* Government's Statement With Respect to Sentencing, at 5-10 (Docket #50).  The Government's request for a within guidelines sentence of 54 months both properly incorporates the sentencing factors set forth in 18 U.S.C. § 3553, and is in line with other criminal cases involving criminal activity perpetrated using botnets. In *United States v. Rad*, the defendant received a sentence of 71 months for his involvement in a pump-and-dump scheme that used, *inter alia*, botnets to distribute spam promoting certain stocks. *See* Judgment in a Criminal Case, *United States v. Rad*, 3:11CR161-01, at 3 (D.N.J. May 14, 2013) (Docket #98); Press Release, "Organizer of International Securities Fraud Ring Sentenced to Prison for Using Hackers to Falsely Inflate Stock Prices," available at https://archives.fbi.gov/archives/newark/press-releases/2013/organizer-of-international-securities-fraud-ring-sentenced-to-prison-for-using-hackers-to-falsely-inflate-stock-prices. In *United States v. Tverdokhlebov*, the defendant was sentenced to 110 months for running a sophisticated enterprise that, *inter alia*, operated several botnets to steal personal

and financial information that the enterprise then sold to other criminals. *See* Judgment in a Criminal Case, *United States v. Tverdokhlebov*, 1:17-cr-00009-TSE-1, at 2 (E.D. Va. July 7, 2017) (Docket #61); Press Release, "Russian-Born Cybercriminal Sentenced to Over Nine Years in Prison," available at https://www.justice.gov/usao-edva/pr/russian-born-cybercriminal-sentenced-over-nine-years-prison.

## CONCLUSION

For the reasons set forth above, the Government respectfully asserts that the Bureau of Prisons must first make any determination about what credit Senakh is entitled to receive pursuant to 18 U.S.C. § 3585(b) for the time he has already served, and that no restitution to AFF is warranted based on the facts of this case and controlling Eighth Circuit caselaw, and reiterates its request that the Court impose a sentence of 54 months imprisonment.

Dated: July 26, 2017                     Respectfully Submitted,

                                         Gregory G. Brooker
                                         Acting United States Attorney

                                         *s/ Timothy Rank*
                                         BY: Timothy Rank
                                         Assistant U.S. Attorney

                                         *s/ Benjamin Fitzpatrick*
                                         BY: Benjamin Fitzpatrick
                                         Senior Counsel
                                         Computer Crime and Intellectual
                                         Property Section, Criminal Division

                                         *s/ Aaron Cooper*
                                         BY: Aaron Cooper
                                         Senior Counsel

                                           Computer Crime and Intellectual
                                           Property Section, Criminal Division